

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 APR 18  AM 7: 41

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEROY BANKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-2854** |
| **FRANKLIN AMERICAN MORTGAGE CO., et al** | **SECTION "N" (3)** |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to the reference of the District Judge, directing the undersigned Magistrate Judge to handle all pre-trial matters and to submit findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(A)(B). *See* Order of Reference to U.S. Magistrate Judge dated November 5, 2004 [Rec. Doc. No. 5]. Presently before the Court is a Rule 12(b)(6) Motion to Dismiss filed on behalf of defendants, Franklin American Mortgage Company and Kim Hill [Rec. Doc. No. 32]. *Via* minute entry order dated January 28, 2005 [Rec. Doc. No. 34], this Court ordered the plaintiff to file any response he may have to the aforesaid motion on or before February 16, 2005, following which the matter would be deemed submitted for decision without oral hearing. Thereafter, Banks filed a "Motion in Opposition/ Petition for Certiorari" [Rec. Doc. No. 49]. On March 17, 2005, this Court conducted a *Spears* hearing for the purpose of determining the factual basis of all of the plaintiff's claims against defendants, Franklin American Mortgage Company and Kim Hill.

The undersigned Magistrate Judge, having considered the pleadings, defendants' motion, plaintiff's written opposition, plaintiff's March 17, 2005 *Spears'* hearing testimony and the applicable

1



law, RECOMMENDS that the Motion to Dismiss filed on behalf of Franklin American Mortgage Company and Kim Hill be GRANTED and that all of the plaintiff's claims against the aforesaid defendants be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915 (e)(2)(B)(i-ii).

## BACKGROUND

Plaintiff has filed the following claims against Franklin American Mortgage Company (FAMC) and/or Kim Hill, to wit: (1) negligence; (2) malicious indifference; (3) fraud; (4) conspiracy; (5) breach of contract; (6) wrongful death; (7) violations of 12 U.S.C. Section 2601; (8) violation of 24 CFR Part 3500; (9) violation of Louisiana's Dead Man Statute; and (10) violation of plaintiff's right to procedural due process under the Fourteenth Amendment of the United States Constitution. Plaintiff's claims allegedly arise out of the mortgage and/or closing contract entered into by and between FAMC and Glen C. Banks (plaintiff's now-deceased mother), regarding a residence located at 626-28 So. Alexander Street, New Orleans, Louisiana 70119 (hereinafter referred as the "Property").

More particularly, on or about February 14, 2001, the late Ms. Glen C. Banks ("Ms. Banks" or "Borrower") entered into a closing contract/mortgage agreement with FAMC. The terms and conditions of these agreements were that FAMC would disburse/loan certain funds to Ms. Banks in her capacity as "Borrower" conditioned upon her agreement to the terms and conditions of the aforesaid contracts. Ms. Banks defaulted on her loan[1] and, subsequent to the default, Ms. Banks

---

[1] *See* Plaintiff's Complaint; CREDCO Instant Merge Credit Report dated August 18, 2004 (indicating that Midland Mortgage Company instituted foreclosure proceedings in March of 2004 and that amounts past due on the mortgaged Property then totaled $4,486.00) [attached as an in globo exhibit to Plaintiff's Complaint]; Homeownership Counseling Certification, executed by Glen C. Banks on August 31, 2004 [attached as an in globo exhibit to Plaintiff's Complaint].

died.[2]

The "Cash Sale" of Property by and between Anthony Hyde/Seller, and Ms. Banks/Purchaser,

is specifically denominated an "As Is" sale of the property and provides in pertinent part:

> That Buyer(s) [Glen C. Banks] or (his/her) representatives have fully examined and inspected the entire building which comprise the premises prior to execution of this Agreement, and that Buyer(s) know and (is/are) satisfied with the physical condition of the premises in all respects, including, but not limited to, any visible or hidden termite infestation and resultant damage therefrom, and that same is acceptable to Buyer(s) "AS IS" and that Buyer(s) agree(s) that no representation, statements or warranties have at any time been made by Seller(s), or its agents, as to the physical condition or state of repair of the premises in any respect, and that the purchase price takes into consideration the condition of the premises.

> Seller(s) and Purchaser(s) [Glen C. Banks] hereby acknowledge and recognize that this sale is in an "AS IS" condition, and accordingly, purchaser(s) do hereby relieve and release seller(s) and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition pursuant to Louisiana Civil Code Articles 2520, et seq. or for diminution of purchase price pursuant to Louisiana Civil Code Articles 2541, et Seq.[3]

The FHA Louisiana Mortgage appended *in globo* to plaintiff's Complaint sets forth the following

"Covenants", to wit:

> UNIFORM COVENANTS: Borrower [Ms. Banks] and Lender covenant and agree as follows:
>     1. **Payment of Principal and Interest and Late Charge**: **Borrower** [Ms. Banks] **shall pay when due** the principal of, and interest on the debt evidenced by the Note and late charges due under the Note.
>     2. **Monthly Payment of** Taxes, **Insurance**, and Other Charges. **Borrower** [Ms. Banks] **shall include in each monthly payment,** together with the principal and interest as set forth in the Note and any late charges, **a sum for** (a) taxes and special assessment levied or be levied against the Property, (b) leasehold payments or ground rents on the Property, and ( c ) **premiums for insurance required under Paragraph 4**....

---

[2]*See* Certificate of Death signed by the Coroner C.L. Holdren on September 23, 2004.

[3]*See* CASH SALE dated February 14, 2001 [attached in globo to plaintiff's Complaint].

* * *

**4. Fire, Flood and Other Hazard Insurance.** *Borrower [Ms. Banks] shall insure all improvements on the Property*, **whether now in existence or subsequently erected,** *against any hazards, casualties or contingencies*, **including fire, for which Lender requires insurance.** This insurance shall be maintained in the amounts and for the periods that Lender requires. **Borrower [Ms. Banks] shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary....**[4]

The clear and unambiguous terms of the mortgage instrument, which was appended to plaintiff's complaint and incorporated by reference, states that the it is the Borrower's (*i.e.*, Ms. Banks' *not the Lender's*) obligation to insure improvements on the Property against any and all hazards and to pay the premiums therefor.

As to grounds for debt acceleration, the operative agreement relied on by the plaintiff and appended to his complaint, sets forth the following terms, to wit:

**(9) Grounds for Acceleration of the Debt.**
(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
    (i) Borrower [Ms. Banks] defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
    (ii) Borrower [Ms. Banks] defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.[5]

As to notice, the security instrument (mortgage) plainly states:

Notices.  **Any notice to Borrower** [Ms. Banks] provided for in this Security Instrument **shall be given by delivering it** or by mailing it by first class mail unless applicable law requires use of another method. **The notice shall be directed to the**

---

[4]*See* FHA Louisiana Mortgage at p. 2 of 6 (bolding and italicized emphasis added) [attached in globo to plaintiff's Complaint].

[5]*See* Louisiana FHA Mortgage, at p. 3 of 6 (bolding and italicized emphasis added) [attached in globo to plaintiff's Complaint]; *see also* Mortgage Note at para. 8, p. 2 of 2 (same).

**Property Address** or any other address Borrower designates by notice to Lender....
**Any notice provided for in this Security Instrument shall be deemed to have been
given to Borrower ... when given as provided in this paragraph** [*i.e.*, delivery to
Property Address].[6]

The plaintiff's *pro se* complaint of conspiracy, fraud and wrongful death, *inter alia*,

against FAMC, Kim Hill and others is premised on the plaintiff's allegations that the defendants

agreed to the facts as stated in the closing documents and, more particularly, that the defendants

"agreed to insure" the Property.[7] Plaintiff seeks damages in the sum of $150, 000,000.00 for breach

of contract, violation of his and the decedent's rights to procedural due process guaranteed under the

Fourteenth Amendment and violation of state tort law for purposeful hazardous exposure to "lead

paint" and "asbestos," which allegedly endangered his own health and safety and caused Ms. Banks'

death.[8] Plaintiff further alleges some undefined fault/conspiracy on the part of FAMC in that it

sold/assigned the mortgage. FAMC's sale/assignment of the mortgage appears to be the sole basis

of his conspiracy claim against each, imputing the alleged acts of Midland Mortgage Company and

others to the aforesaid defendants.[9] Additionally, plaintiff alleges that the exhibits attached to his

complaint prove his conspiracy theory[10] in that the mortgage was transferred three or four times "for

some unknown reasons"[11] to four different mortgage companies.

---

[6]*Id.* at p. 4 of 6.

[7]*See* Complaint, at Statement of Facts pp. 1 and 4.

[8]*See id.*, at Section entitled "Relief As Itemized" at para. 1.

[9]*See id.*, at pp. 11-12.

[10]*Id.*, at p. 22.

[11]*Id.*, at p. 11.

Within the confines of the Complaint itself, plaintiff admits that Ms. Banks had defaulted on her mortgage payments and was in breach of the terms of the loan agreement.  However, plaintiff attributes Ms. Banks' continuing breach to "the unhealthy condition of the property," which allegedly caused her to "become disabled, very sick and [to] die."[12]   Plaintiff specifically alleges that "the delinquencies in her mortgage payments" were "caused" by the defendants' breach of the covenant agreement in failing to discover latent defects in the premises and to procure hazard insurance coverage.

Regarding the payment of insurance premiums, plaintiff references the "application of payments" and "acceleration of debt" clauses in the operative contract.[13]   The "Application of Payments" clause merely requires the Lender to apply mortgage payments made by the Borrower first, to the mortgage insurance premium and second, to any taxes, special assessments, leasehold payments and hazard insurance premiums.[14]   It does not obligate the Lender to pay hazard insurance premiums, which Ms. Banks agreed to pay along with the principal and interest.[15]   Paragraph 9(e) addresses acceleration of the debt owed by the Borrower and simply states that the Lender may not exercise that option (to accelerate the debt and require immediate payment in full of all sums secured by the Mortgage), when the unavailability of insurance is *solely* due to the Lender's failure to remit a mortgage insurance premium to the Secretary.[16]

---

[12]*Id.*, at pp. 16- 17.

[13]*See* Complaint at p. 2.

[14]*See* Mortgage at p. 2of 6, para. 3.

[15]*See* Footnote 2, *supra*, and accompanying text.

[16]*See* Mortgage, at p. 4 of 6, para. 9(e).

The Court here reiterates that the plaintiff has confessed/admitted that Ms. Banks had defaulted on her mortgage payments and did so prior to institution of the executory proceedings. Nevertheless, at the time of the *Spears* hearing, Banks espoused the position that (1) this was simply a "Cash Sale" and (2) there never was any mortgage on the property. Banks could not explain, how, in the absence of a mortgage with respect the property, FAMC and/or Kim Hill could possibly owe any duty to Ms. Banks or himself with respect to the property.

## CONTENTIONS OF THE PARTIES

FAMC and Kim Hill seek dismissal of all of the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In this regard, defendants contend that: (1) plaintiff has failed to allege sufficient facts to support his claims against them; (2) to the extent that any claim has been alleged, the relevant prescriptive periods (whether under state or federal law) have prescribed; and (3) plaintiff has no right of action. Defendants' argument focuses almost exclusively on specification number one.

In opposition to the FAMC/Hill motion plaintiff avers that the exhibits in the record "totally support his claims against FAMC and Kim Hill," but that "there is a genuine issue as to the amount of damages."[17] Plaintiff highlights the provision in the mortgage covenants stating that all insurance on the property shall be carried with companies approved by the Lender. Plaintiff argues that, because the insurance policy contained a "loss payable clause," the lender (FAMC) knew of the condition of the property, failed to maintain and/or cancelled the policy and somehow conspired with Midland Mortgage Co., Allstate Insurance Co. and others to foster Ms. Banks' unawareness of the

---

[17]Plaintiff's Motion in Opposition and Petition for Certiorari, at pp. 3-4.

alleged hazardous condition of the property.[18]

## APPLICABLE STANDARDS

### 1. Rule 12(b)(6) Standard

The Fed. R. Civ. P. 12(b)(6) standard is met if "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."[19]   In *Beanal v.*

*Freeport-McMoran, Inc.,* the Fifth Circuit observed:

> A motion to dismiss under Rule 12(b)(6) is rarely granted. The complaint must be
> liberally construed in favor of the plaintiff, and all facts pleaded in the complaint taken
> as true. The district court may not dismiss a complaint under Rule 12(b)(6) unless it
> appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
> which would entitle him to relief. This strict standard of review under Rule 12(b)(6)
> has been summarized as follows: The question therefore is whether in the light most
> favorable to the plaintiff and with every doubt resolved in his behalf, the complaint
> states any valid claim for relief.[20]

While viewed with disfavor, Rule 12(b)(6) dismissal may nevertheless be proper where the plaintiff

can prove no set of facts entitling him to relief.[21]

Since federal courts simply require "notice pleading," the district court must construe the

plaintiff's pleadings liberally. Plaintiff's prolix pleading , which incorporates by reference contractual

agreements and medical records, *inter alia*, nevertheless suffers from a complete lack of detail

---

[18]*Id.* at p. 7.

[19]*J. R. Striplin v. Jordan Production Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000) (internal
quotations and citations omitted).

[20]*Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999) (citations and
quotation marks omitted). *See also Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001),
*cert. denied sub nom, Cloud v. United States,* 536 U.S. 960 (2002); *Lowrey v. Texas A&M Univ.
System,* 117 F.3d 242, 247 (5th Cir. 1997); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).

[21]*Ramming,* 281 F.3d at 161.

regarding the claims of fraud, conspiracy and wrongful death alleged against the defendants, FAMC and Kim Hill.

In the context of the March 17, 2005 *Spears* hearing, plaintiff was given the opportunity to state a basis for his claims. The plaintiff then testified that there was never any mortgage at all and, therefore, FAMC must be guilty of fraud. Plaintiff bases these claims solely on the existence of a written contract of sale with respect to the property entitled "Cash Sale" executed by the Seller [Anthony Hyde] and the Purchaser [Ms. Glen C. Banks].

As previously stated, a court should consider only the pleadings when deciding a Rule 12(b)(6) motion to dismiss. When a court considers matters outside of the pleadings, Fed. R. Civ. P. 12(b) requires the court to treat the motion to dismiss as one for summary judgment and dispose of it as provided in Rule 56. Nevertheless, there are exceptions to this mandate and this case falls squarely into the exception discussed below.

The Court need not convert defendants' motion to dismiss into a motion for summary judgment despite the reference to documents that are extraneous to the Complaint. Plaintiff referred to all of these documents in his pleadings, appended the aforesaid documents to his pleading and incorporated them by reference. Moreover, the documents at issue were tendered by the plaintiff as part and parcel of the Complaint and the defendants do not controvert their authenticity.

The operative exception that permits the Court to consider extraneous documents is that they were submitted by the plaintiff and explicitly referred to in his Complaint. Moreover, the documents are central to his claims.[22]   The Fifth Circuit has explicitly recognized that  a court may consider

---

[22]*See Sheppard v. Texas Department of Transportation*, 158 F.R.D. 592, 596 (E. D. Tex. 1994).

9

documents attached not only to the pleadings, but to the motion to dismiss under rule 12(b)(6).[23]  For this exception to apply, the documents must be referred to in the complaint and be integral and central to the plaintiff's claim.[24]  A fair reading of the plaintiff's complaint admits as much.

A main factor in directing courts to look solely toward the pleadings when deciding a rule 12(b)(6) motion is the concern that statements outside of the complaint will not provide adequate notice to a plaintiff.[25]   Where, as here, the plaintiff has actual notice and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.[26]

## 2.  28 U.S.C. § 1915's Standard

An *in forma pauperis* complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) if it has no arguable basis in fact or law.[27]   Both aspects are implicated by defendants' Motion to Dismiss.  In particular, the defendants highlight the dichotomy between the plaintiff's claims herein and the contractual language set forth in the operative Security Instrument, which plainly states that it is the Buyer's (Ms. Banks') obligation to pay hazard insurance premiums.

---

[23]*See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,  498-99 (5th Cir. 2000).

[24]*Id.* at 499 (*quoting Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir.1993)).

[25]*See Sheppard*, 158 F.R.D. at 596 n. 7.

[26]*See id.* (*citing Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 43 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992)); *Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 872 n. 4 (W. D. Tex. 2001).

[27]*See, e.g., Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994);  *Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994).

A finding of "factual frivolousness" is appropriate when the facts alleged rise to the level of the irrational, fanciful or wholly incredible.[28]  "A complaint lacks an arguable basis in law if it is based undisputably on a meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[29]  Banks complaint, even as amended by his *Spears* hearing testimony, suffers from both deficiencies.  28 U.S.C. § 1915 provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall* dismiss the case at any time the court determines that –
>> (B) the action or appeal –
>>> (I)   is frivolous or malicious; [or]
>>> (ii)  fails to state a claim for which relief may be granted....[30]

## ANALYSIS

As aforestated, the plaintiff's claims against FAMC and Kim Hill should only be dismissed if it appears beyond doubt that the pleading party can prove no set of facts in support of the claims raised that would entitle him to relief.[31]  The question is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.[32]

Plaintiff's complaint claims violations of the decedent's and his own constitutional rights , violations of state law and other wrongs (including wrongful death) stemming from a mortgage agreement and note executed by and between his now deceased mother (Glen C. Banks) and FAMC.

---

[28]*See Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

[29]*Davis,* 157 F.3d at 1005 (*quoting McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

[30]28 U.S.C. § 1915(e)(2)(B)(I-ii).

[31]*See Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.), *cert. denied,* 513 U.S. 868 (1994).

[32]*See Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999).

Banks only conclusorily alleges that acts or omissions on the part of the defendants caused the plaintiff and the decedent harm. Plaintiff references the "Cash Sale" by and between Ms. Banks and the Seller, the Mortgage, including the uniform covenants, but fails to point out a single contractual provision imposing a duty upon defendants FAMC and Kim Hill that was breached. The entire premise of the plaintiff's complaint is that the FAMC and Kim Hill were obligated to pay hazard insurance premiums and, because of their breach of that obligation (including sale of the mortgage to another mortgage company), they are somehow (1) involved in a conspiracy to deprive the plaintiff and the decedent of their constitutional rights and (2) liable for the wrongful death of Ms. Banks and undefined personal injury to himself.

As counsel for the defendants aptly argues, a close reading of the language of the provisions referenced and quoted by plaintiff in his Complaint demonstrate that he is not entitled to the relief requested. The words, terms and conditions of the agreements entered into by and between Ms. Banks and FAMC, which are quoted above *in extenso* in the background section of this order, are clear and explicit and require no further explanation. Additionally, the Court notes that the Disclosure attached to the Settlement Statement mirrors the covenants quoted herein above. More particularly, the Disclosure provides: "You (**Borrower/Ms. Banks**) may obtain property insurance *from anyone you want* that is acceptable to Lender."[33]

Plaintiff's claim of conspiracy against FAMC and Kim Hill is based solely upon the fact that FAMC sold/assigned the mortgage on the Property – *i.e.*, a perfectly lawful practice in the mortgage industry. As to FAMC and Hill, the claim of conspiracy is both factually and legally frivolous and/or

---

[33]*See* FAMC's Disclosure dated February14, 2001 (referencing Loan No. 32231 with respect to the security interest/mortgage on 626-28 South Alexander St., New Orleans, Louisiana) [attached as an in globo exhibit to the Complaint].

fails to state a claim upon which relief can be granted.  FAMC and its employees had nothing whatsoever to do with the property, the payment of insurance premiums with respect to the property or the application of  payments made by the Borrower (Ms. Banks), once it sold or assigned the mortgage.    As to the cancellation of insurance on the subject Property, the only "Notice of Cancellation" referred to by the plaintiff is dated December 31, 2004 and addressed to Midland Mortgage Company,  not to FAMC.[34]

The Court now turns to the plaintiff's conclusory allegations/argument  that medical records attached to his Complaint provide sufficient proof of his wrongful death claim, *inter alia*.  The treatment records fall far short of the mark of demonstrating that Ms. Banks' disease/death was caused by any cancer,  metastatic disease or neoplastic process.  The Certificate of Death signed by Coroner C.L. Holdren on September 23, 2004 simply certified that Ms. Banks' immediate cause of death was "cardio-pulmonary arrest" and that the underlying cause of her death was "diabetic coma."[35]  Memorial Medical Center's treatment records/radiologic report are also deficient.  Said records note  the existence of  (1) an "enlarged lobe of left thyroid," which "may represent a multi nodular goiter,"  (2) "mediastinal lymphadenopathy with a mildly enhancing soft tissue mass," which "may represent matted lymph nodes" and (3) "lymph nodes in both axilla enlarged in length" but "without characteristic increased width associated with infiltrated lymph nodes."[36]  Dr. Daniel C.

---

[34]*See* Notice of Cancellation dated December 31, 2004 (noting that the reason for cancellation was "company election" without any further specification and directing that any inquiry into the matter be directed to the insurance agent) [Exhibit "15 A" to Plaintiff's Motion in Opposition].

[35]*See* Certificate of Death signed by the Coroner C.L. Holdren on September 23, 2004 [attached to Complaint as an in globo exhibit].

[36]*See* Memorial Medical Center's Radiologic Consultation Report of Dr. Daniel C. Harlan, dated September 8, 2004 [attached to Complaint as an in globo exhibit].

Harlan did not conclude that Ms. Banks had "cancer;" rather, Dr. Harlan's report merely states that (1) "neoplastic process cannot be excluded," (2) "suspicion of lymphoma" and (3) "metastatic disease" is "a possibility."[37] He recommended attention on follow-up imaging.[38] *Id. There was no follow up imaging.* Dr. Evablanche B. Centanni referred Ms. Banks to MCLNO-Endocrine for further evaluation and treatment with the "Diagnosis/Suspected Condition" of "hyperthyroidism."[39] Ms. Banks died of cardiac arrest/diabetic coma on September 23, 2004, prior to her scheduled October 27, 2004 appointment at MCLNO/LSU Endocrinology Clinic.[40]

The Court is mindful of the law that a complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief.[41]  When, however, a defendant is charged with fraud, the plaintiff must state the circumstances constituting fraud with particularity.[42]  What constitutes particularity will "necessarily differ with the facts of each case."[43]  Although Rule 9(b)

---

[37]*See* Dr. Daniel C. Harlan Report dated September 8, 2004, at p. 2 of 2.

[38]*Id.*

[39]*See* Community Care Referral/Authorization Form issued by Dr. Centanni on September 29, 2004 (diagnosing hyperthyroidism) [attached to Complaint as an in globo exhibit]. Hyperthyroidism is defined as the "constellation of signs and systems due to excessive thyroid hormone in the blood, either from exaggerated functional activity of the thyroid gland or from excessive administration of thyroid hormone," which is "manifested by thyroid enlargement, emaciation, sweating, tachycardia, exophthalmos and tremor." *See* Gould's Medical Dictionary, at p. 645.

[40]*See* Certificate of Death; MCOLNO's Patient Appointment Notice [attached to Complaint as an in globo exhibit].

[41]Fed. R. Civ. P. 8(a)(2).

[42]Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

[43]*Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992).

14

en

permits a plaintiff to allege generally the defendant's intent to commit fraud, a mere allegation that

the defendant had the requisite intent will not satisfy Rule 9(b).[44]   To adequately plead fraudulent

intent, the plaintiff must set forth specific facts that support an inference of fraud.[45]   At a minimum,

courts require the plaintiff to specifically state the time, place and contents of the alleged false

representation, as well as the identity of the person making the alleged misrepresentation and what

that person obtained thereby.[46] Dismissal of a fraud claim for failure to plead the claim with

particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).[47]

Plaintiff's complaint fails to satisfy the heightened pleading requirement imposed by Rule

9(b).   Broad unsupported allegations of conspiracy do not satisfy the pleading requirements of the

Federal Rules of Civil Procedure.[48]   Rule 9(b) was enacted to guard against the labeling of

---

[44]*See Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994); *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1068 (5th Cir.1994) ("[The] case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent.").

[45]*Tuchman*, 14 F.3d at 1068.

[46]*See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.) (*citing Tuchman*, 14 F.3d at 1068), *cert. denied*, 522 U.S. 966 (1997); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir.1993); *see also United States ex rel. Johnson v. Shell Oil Company*, 183 F.R.D. 204, 206 (E.D.Tex.1998) (explaining that, under Rule 9(b), the complaint must contain the "who, what, when, where, and how" of the false representation).

[47] *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996).

[48]*See Jefferson v. Lead Industries Association, Inc.*, 106 F.3d 1245, 1250 (5th Cir.1997) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Guidry v. United States Tobacco Company*, 188 F.3d 619, 631-32 (5th Cir.1999) ("a general allegation of conspiracy without a statement of the facts constituting that conspiracy is only an allegation of a legal conclusion"); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir.1986) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.") (internal quotation marks omitted).

"non-actionable expression[s] of opinion" as fraud claims.[49]

Although the purpose of Rule 9(b) is to provide adequate notice to the defendant,[50] the complaint must set forth some facts lest it be dismissed as containing mere conclusory allegations that amount "to nothing more than speculation."[51]  Here, the plaintiff's complaint contains no allegations, whatsoever, regarding either FAMC or Hill's part in a conspiracy.   Plaintiff makes the quantum leap from the mere fact that FAMC assigned the mortgage to another for some unknown reason to the conclusion that FAMC and Hill participated in conspiracy.   Plaintiff's omissions cannot be overlooked.[52]

Plaintiff's *Spears* hearing testimony does not suffice insofar as breathing Rule 9(b) particularity into Banks's conclusory allegations.  Indeed, Banks' testimony, that there never was a mortgage and that this was simply a "Cash Sale," *undermines* the plaintiff's allegations that a mortgage company owed any duty to Ms. Banks or himself with respect to the property.  Plaintiff's *Spears* hearing testimony merely echoes conclusory allegations of fraud and conspiracy found lacking in his original complaint.  Additionally, plaintiff's motion in opposition states little with respect to the particularity required by Rule 9(b) and instead invites the court to make unwarranted inferences and assumptions.

---

[49]*See Williams*, 112 F.3d at 178,

[50]*See, e.g., Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216 (E. D. La.1990), *aff'd*, 954 F.2d 278 (5th Cir.1992).

[51]*United States ex rel. Thompson v. Columbia/HCA Healthcare Corporation*, 125 F.3d 899, 903 (5th Cir.1997); *see also Williams*, 112 F.3d at 178 (Rule 9(b) demands a larger role for pleading in defining of [fraud] claims).

[52]*See Thompson*, 125 F.3d at 903; *Tuchman*, 14 F.3d at 1068; *see also Williams*, 112 F.3d at 178 ("A complaint can be long-winded, even prolix, without pleading with particularity.").

16

In light of Banks' Spears hearing testimony that "there never was any mortgage," the Court feels compelled to remind the plaintiff of his obligations pursuant to Fed. R. Civ. P. 11, to wit: "By presenting to the court (whether by signing, filing, submitting, or later advocating) written motion, or other paper, an attorney *or unrepresented party* is certifying that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, – (1) it is not being presented for any improper purpose...; (2) the claims ... and other legal contentions therein are warranted by existing law...; and (3) the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support ...." *Id.* (italicized emphasis added). In this regard, the Court highlights that the existence of the aforesaid mortgage on the property is pivotal to the plaintiff's claim of wrongful death/breach against Franklin American Mortgage Company, et al and the clear terms of the mortgage do not support the plaintiff's claims as discussed above.

Accordingly and considering the standards set forth in Federal Rule of Civil Procedure 12(b)(6)  and 28 U.S.C. § 1915 discussed at length above, this Court makes the following recommendations, to wit:

## RECOMMENDATIONS

**IT IS RECOMMENDED** that the Rule 12(b)(6) motion filed on behalf of Franklin American Mortgage Company and Kim Hill be GRANTED and that the plaintiff's claims against the aforesaid defendants be dismissed with prejudice.

## OBJECTIONS

A party's failure to file written objections to the findings, conclusions and recommendations of a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-

17

to proposed factual findings and  legal conclusions accepted by the district judge, provided that the

party has been served with notice that such consequences will result from a failure to object.

*Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 15 day of APRIL, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

18