FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 25 P 2: 56

[illegible signature/stamp]

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEROY BANKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-2854** |
| **FRANKLIN AMERICAN MORTGAGE CO., et al** | **SECTION "N" (3)** |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to the reference of the District Judge, directing the undersigned Magistrate Judge to handle all pre-trial matters and to submit findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(A)(B). *See* Order of Reference to U.S. Magistrate Judge dated November 5, 2004 [Rec. Doc. No. 5]. Presently before the Court are the Court's Rule to Show Cause with respect to Civil Sheriff Paul Valteau [Rec. Doc. No. 9] and the following Motions to Dismiss, to wit:

(1) U.S. Department of Housing and Urban Development's Motion to Dismiss [Rec. Doc. No. 57];

(2) Rosalind G. Washington's Motion to Dismiss [Rec. Doc. No. 58];

(3) H. Edward Ellzey's Motion to Dismiss [Rec. Doc. No. 61]; and

(4) David C. McMillin's Motion to Dismiss [Rec. Doc. No. 35/40].

The plaintiff filed formal responses to the Court's Rule to Show Cause with respect to the Civil Sheriff Paul Valteau and to the motions to dismiss filed on behalf of the aforesaid defendants. On May 24, 2005, this Court conducted a *Spears* hearing for the purpose of determining the factual

1

___ Fee_____
___ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No._____

basis of all of the plaintiff's claims against all of the aforesaid defendants.

The undersigned Magistrate Judge, having considered the pleadings, defendants' motion, plaintiff's written opposition, plaintiff's May 25, 2005 *Spears'* hearing testimony and the applicable law, RECOMMENDS that the claims against the Civil Sheriff Paul Valteau, the Federal Defendants and Rosalind G. Washington be DISMISSED WITH PREJUDICE for failure to state a claim. Moreover, the Court notes that without any state or federal actors, federal question jurisdiction is absent and was absent at the outset of the case considering this Court's determination that the plaintiff has failed to state a cognizable claim against the aforesaid defendants. Accordingly, the undersigned Magistrate Judge FURTHER RECOMMENDS that the balance of the plaintiff's case be DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, since complete diversity of citizenship is lacking and was so lacking at the outset of this case.

## I. BACKGROUND

Plaintiff has filed the following claims, to wit: (1) negligence; (2) malicious indifference; (3) fraud; (4) conspiracy; (5) breach of contract; (6) wrongful death; (7) violations of 12 U.S.C. Section 2601; (8) violation of 24 CFR Part 3500; (9) violation of Louisiana's Dead Man Statute; and (10) violation of plaintiff's right to procedural due process under the Fourteenth Amendment of the United States Constitution. Plaintiff's claims allegedly arise out of the mortgage and/or closing contract entered into by and between FAMC and Glen C. Banks (plaintiff's now-deceased mother), regarding a residence located at 626-28 So. Alexander Street, New Orleans, Louisiana 70119 (hereinafter referred as the "Property").

More particularly, on or about February 14, 2001, the late Ms. Glen C. Banks ("Ms. Banks" or "Borrower") entered into a closing contract/mortgage agreement with FAMC. The terms and

conditions of these agreements were that FAMC would disburse/loan certain funds to Ms. Banks in her capacity as "Borrower" conditioned upon her agreement to the terms and conditions of the aforesaid contracts. Ms. Banks defaulted on her loan[1] and, subsequent to the default, Ms. Banks died.[2]

The "Cash Sale" of Property by and between Anthony Hyde/Seller, and Ms. Banks/Purchaser, is specifically denominated an "As Is" sale of the property and provides in pertinent part:

> That Buyer(s) [Glen C. Banks] or (his/her) representatives have fully examined and inspected the entire building which comprise the premises prior to execution of this Agreement, and that Buyer(s) know and (is/are) satisfied with the physical condition of the premises in all respects, including, but not limited to, any visible or hidden termite infestation and resultant damage therefrom, and that same is acceptable to Buyer(s) "AS IS" and that Buyer(s) agree(s) that no representation, statements or warranties have at any time been made by Seller(s), or its agents, as to the physical condition or state of repair of the premises in any respect, and that the purchase price takes into consideration the condition of the premises.

> Seller(s) and Purchaser(s) [Glen C. Banks] hereby acknowledge and recognize that this sale is in an "AS IS" condition, and accordingly, purchaser(s) do hereby relieve and release seller(s) and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition pursuant to Louisiana Civil Code Articles 2520, et seq. or for diminution of purchase price pursuant to Louisiana Civil Code Articles 2541, et Seq.[3]

The FHA Louisiana Mortgage appended *in globo* to plaintiff's Complaint sets forth the following "Covenants", to wit:

---

[1] *See* Plaintiff's Complaint; CREDCO Instant Merge Credit Report dated August 18, 2004 (indicating that Midland Mortgage Company instituted foreclosure proceedings in March of 2004 and that amounts past due on the mortgaged Property then totaled $4,486.00) [attached as an in globo exhibit to Plaintiff's Complaint]; Homeownership Counseling Certification, executed by Glen C. Banks on August 31, 2004 [attached as an in globo exhibit to Plaintiff's Complaint].

[2] *See* Certificate of Death signed by the Coroner C.L. Holdren on September 23, 2004.

[3] *See* CASH SALE dated February 14, 2001 [attached in globo to plaintiff's Complaint].

UNIFORM COVENANTS: Borrower [Ms. Banks] and Lender covenant and agree as follows:

1. **Payment of Principal and Interest and Late Charge: Borrower** [Ms. Banks] **shall pay when due** the principal of, and interest on the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges. Borrower** [Ms. Banks] **shall include in each monthly payment,** together with the principal and interest as set forth in the Note and any late charges, **a sum for** (a) taxes and special assessment levied or be levied against the Property, (b) leasehold payments or ground rents on the Property, and **( c ) premiums for insurance required under Paragraph 4**....

* * *

4. **Fire, Flood and Other Hazard Insurance.** *Borrower [Ms. Banks] shall insure all improvements on the Property,* **whether now in existence or subsequently erected,** *against any hazards, casualties or contingencies,* **including fire, for which Lender requires insurance.** This insurance shall be maintained in the amounts and for the periods that Lender requires. **Borrower** [Ms. Banks] **shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary....**[4]

The clear and unambiguous terms of the mortgage instrument, which was appended to plaintiff's complaint and incorporated by reference, states that the it is the Borrower's (*i.e.*, Ms. Banks' *not the Lender's*) obligation to insure improvements on the Property against any and all hazards and to pay the premiums therefor.

As to grounds for debt acceleration, the operative agreement relied on by the plaintiff and appended to his complaint, sets forth the following terms, to wit:

**(9) Grounds for Acceleration of the Debt.**
(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(I) Borrower [Ms. Banks] defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

---

[4]*See* FHA Louisiana Mortgage at p. 2 of 6 (bolding and italicized emphasis added) [attached in globo to plaintiff's Complaint].

4

(ii) Borrower [Ms. Banks] defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.[5]

As to notice, the security instrument (mortgage) plainly states:

Notices. **Any notice to Borrower** [Ms. Banks] provided for in this Security Instrument **shall be given by delivering it** or by mailing it by first class mail unless applicable law requires use of another method. **The notice shall be directed to the Property Address** or any other address Borrower designates by notice to Lender.... **Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower ... when given as provided in this paragraph** [*i.e.*, delivery to Property Address].[6]

The plaintiff's *pro se* complaint of conspiracy, fraud and wrongful death, *inter alia*, against FAMC, Kim Hill and others is premised on the plaintiff's allegations that the defendants agreed to the facts as stated in the closing documents and, more particularly, that the defendants "agreed to insure" the Property.[7] Plaintiff seeks damages in the sum of $150, 000,000.00 for breach of contract, violation of his and the decedent's rights to procedural due process guaranteed under the Fourteenth Amendment and violation of state tort law for purposeful hazardous exposure to "lead paint" and "asbestos," which allegedly endangered his own health and safety and caused Ms. Banks' death.[8] Plaintiff further alleges some undefined fault/conspiracy on the part of FAMC in that it sold/assigned the mortgage. FAMC's sale/assignment of the mortgage appears to be the sole basis of his conspiracy claim against each, imputing the alleged acts of Midland Mortgage Company and

---

[5]*See* Louisiana FHA Mortgage, at p. 3 of 6 (bolding and italicized emphasis added) [attached in globo to plaintiff's Complaint]; *see also* Mortgage Note at para. 8, p. 2 of 2 (same).

[6]*Id.* at p. 4 of 6.

[7]*See* Complaint, at Statement of Facts pp. 1 and 4.

[8]*See id.*, at Section entitled "Relief As Itemized" at para. 1.

5

others to the aforesaid defendants.[9]   Additionally, plaintiff alleges that the exhibits attached to his complaint prove his conspiracy theory[10] in that the mortgage was transferred three or four times "for some unknown reasons"[11] to four different mortgage companies.

Within the confines of the Complaint itself, plaintiff admits that Ms. Banks had defaulted on her mortgage payments and was in breach of the terms of the loan agreement.  However, plaintiff attributes Ms. Banks' continuing breach to "the unhealthy condition of the property," which allegedly caused her to "become disabled, very sick and [to] die."[12]   Plaintiff specifically alleges that "the delinquencies in her mortgage payments" were "caused" by the defendants' breach of the covenant agreement in failing to discover latent defects in the premises and to procure hazard insurance coverage.

Regarding the payment of insurance premiums, plaintiff references the "application of payments" and "acceleration of debt" clauses in the operative contract.[13]   The "Application of Payments" clause merely requires the Lender to apply mortgage payments made by the Borrower first, to the mortgage insurance premium and second, to any taxes, special assessments, leasehold payments and hazard insurance premiums.[14]   It does not obligate the Lender to pay hazard insurance premiums,

---

[9]*See id.*, at pp. 11-12.

[10]*Id.*, at p. 22.

[11]*Id.*, at p. 11.

[12]*Id.*, at pp. 16- 17.

[13]*See* Complaint at p. 2.

[14]*See* Mortgage at p. 2of 6, para. 3.

6

which Ms. Banks agreed to pay along with the principal and interest.[15]  Paragraph 9(e) addresses

acceleration of the debt owed by the Borrower and simply states that the Lender may not exercise that

option (to accelerate the debt and require immediate payment in full of all sums secured by the

Mortgage), when the unavailability of insurance is *solely* due to the Lender's failure to remit a

mortgage insurance premium to the Secretary.[16]

The Court here reiterates that the plaintiff has confessed/admitted that Ms. Banks had

defaulted on her mortgage payments and did so prior to institution of the executory proceedings.

Nevertheless, at the time of both *Spears'* hearings conducted by this Court, Banks has espoused the

position that (1) this was simply a "Cash Sale" and (2) there never was any mortgage on the property.

## II. APPLICABLE STANDARDS

### A. Rule 12(b)(6) Standard

The Fed. R. Civ. P. 12(b)(6) standard is met if "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."[17]  In *Beanal v.*

*Freeport-McMoran, Inc.,* the Fifth Circuit observed:

> A motion to dismiss under Rule 12(b)(6) is rarely granted.  The complaint must be
> liberally construed in favor of the plaintiff, and all facts pleaded in the complaint taken
> as true.  The district court may not dismiss a complaint under Rule 12(b)(6) unless it
> appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
> which would entitle him to relief.  This strict standard of review under Rule 12(b)(6)
> has been summarized as follows: The question therefore is whether in the light most
> favorable to the plaintiff and with every doubt resolved in his behalf, the complaint

---

[15]*See* Footnote 2, *supra*, and accompanying text.

[16]*See* Mortgage, at p. 4 of 6, para. 9(e).

[17]*J. R. Striplin v. Jordan Production Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000) (internal
quotations and citations omitted).

states any valid claim for relief.[18]

While viewed with disfavor, Rule 12(b)(6) dismissal may nevertheless be proper where the plaintiff can prove no set of facts entitling him to relief.[19]

Since federal courts simply require "notice pleading," the district court must construe the plaintiff's pleadings liberally. Plaintiff's prolix pleading, which incorporates by reference contractual agreements and medical records, *inter alia*, nevertheless suffers from a complete lack of detail regarding the claims of fraud, conspiracy and wrongful death alleged against the defendants, FAMC and Kim Hill.

In the context of two *Spears'* hearings (on March 17, 2005 and on May 24, 2005), plaintiff was given the opportunity to state a basis for his conclusory claims that all of the defendants named in this lawsuit are "totally in a conspiracy" to take his inheritance, *i.e.*, the mortgaged property at issue in this suit and the subject of foreclosure proceedings in Civil District Court for the Parish of Orleans. Banks variously alleged and testified that there was a mortgage and later that there was never any mortgage at all and, therefore, all of the defendants must be guilty of conspiring to commit fraud both against his now deceased mother and against the plaintiff himself. Plaintiff bases these claims on the existence of a written contract of sale with respect to the property entitled "Cash Sale" executed by the Seller [Anthony Hyde] and the Purchaser [Ms. Glen C. Banks].

---

[18]*Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999) (citations and quotation marks omitted). *See also Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom, Cloud v. United States,* 536 U.S. 960 (2002); *Lowrey v. Texas A&M Univ. System,* 117 F.3d 242, 247 (5th Cir. 1997); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).

[19]*Ramming,* 281 F.3d at 161.

As previously stated, a court should consider only the pleadings when deciding a Rule 12(b)(6) motion to dismiss. When a court considers matters outside of the pleadings, Fed. R. Civ. P. 12(b) requires the court to treat the motion to dismiss as one for summary judgment and dispose of it as provided in Rule 56. Nevertheless, there are exceptions to this mandate and this case falls squarely into the exception discussed below.

The Court need not convert the defendants' motions to dismiss into motions for summary judgment despite the reference to documents that are extraneous to the Complaint. Plaintiff referred to all of these documents in his pleadings, appended the aforesaid documents to his pleadings and incorporated them by reference. Moreover, the documents at issue were tendered by the plaintiff as part and parcel of the Complaint and the defendants do not controvert their authenticity. *See* Ellzey's Motion to Dismiss with attachments.

The operative exception that permits the Court to consider extraneous documents is that they were submitted by the plaintiff and specifically referred to in his Complaint. Moreover, the documents are central to his claims.[20] The Fifth Circuit has explicitly recognized that a court may consider documents attached not only to the pleadings, but to the motion to dismiss under rule 12(b)(6).[21] For this exception to apply, the documents must be referred to in the complaint and be integral and central to the plaintiff's claim.[22] A fair reading of the plaintiff's complaint admits as much.

---

[20]*See Sheppard v. Texas Department of Transportation*, 158 F.R.D. 592, 596 (E. D. Tex. 1994).

[21]*See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[22]*Id.* at 499 (*quoting Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir.1993)).

A main factor in directing courts to look solely toward the pleadings when deciding a rule 12(b)(6) motion is the concern that statements outside of the complaint will not provide adequate notice to a plaintiff.[23]   Where, as here, the plaintiff has actual notice and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.[24]

## B. Rule 9(b) Pleading Standard

The Court is mindful of the law that a complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief.[25]   When, however, a defendant is charged with fraud, the plaintiff must state the circumstances constituting fraud with particularity.[26]   What constitutes particularity will "necessarily differ with the facts of each case."[27]   Although Rule 9(b) permits a plaintiff to allege generally the defendant's intent to commit fraud, a mere allegation that the defendant had the requisite intent will not satisfy Rule 9(b).[28]   To adequately plead fraudulent

---

[23]*See Sheppard*, 158 F.R.D. at 596 n. 7.

[24]*See id.* (*citing Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 43 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992)); *Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 872 n. 4 (W. D. Tex. 2001).

[25]Fed. R. Civ. P. 8(a)(2).

[26]Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

[27]*Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992).

[28]*See Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994); *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1068 (5th Cir.1994) ("[The] case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent.").

intent, the plaintiff must set forth specific facts that support an inference of fraud.[29] At a minimum, courts require the plaintiff to specifically state the time, place and contents of the alleged false representation, as well as the identity of the person making the alleged misrepresentation and what that person obtained thereby.[30] Dismissal of a fraud claim for failure to plead the claim with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).[31]

Broad unsupported allegations of conspiracy do not satisfy the pleading requirements of the Federal Rules of Civil Procedure.[32] Rule 9(b) was enacted to guard against the labeling of "non-actionable expression[s] of opinion" as fraud claims.[33]

Although the purpose of Rule 9(b) is to provide adequate notice to the defendant,[34] the complaint must set forth some facts lest it be dismissed as containing mere conclusory allegations that

---

[29]*Tuchman*, 14 F.3d at 1068.

[30]*See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.) (*citing Tuchman*, 14 F.3d at 1068), *cert. denied*, 522 U.S. 966 (1997); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir.1993); *see also United States ex rel. Johnson v. Shell Oil Company*, 183 F.R.D. 204, 206 (E.D.Tex.1998) (explaining that, under Rule 9(b), the complaint must contain the "who, what, when, where, and how" of the false representation).

[31] *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996).

[32]*See Jefferson v. Lead Industries Association, Inc.*, 106 F.3d 1245, 1250 (5th Cir.1997) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Guidry v. United States Tobacco Company*, 188 F.3d 619, 631-32 (5th Cir.1999) ("a general allegation of conspiracy without a statement of the facts constituting that conspiracy is only an allegation of a legal conclusion"); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir.1986) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.") (internal quotation marks omitted).

[33]*See Williams*, 112 F.3d at 178,

[34]*See, e.g., Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216 (E. D. La.1990), *aff'd*, 954 F.2d 278 (5th Cir.1992).

amount "to nothing more than speculation."[35]

## C. 28 U.S.C. § 1915's Standard

An *in forma pauperis* complaint may be dismissed as frivolous pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(I) if it has no arguable basis in fact or law.[36]   Both aspects are implicated by

defendants' Motion to Dismiss.  In particular, the defendants highlight the dichotomy between the

plaintiff's claims herein and the contractual language set forth in the operative Security Instrument,

which plainly states that it is the Buyer's (Ms. Banks') obligation to pay hazard insurance premiums.

A finding of "factual frivolousness" is appropriate when the facts alleged rise to the level of

the irrational, fanciful or wholly incredible.[37]   "A complaint lacks an arguable basis in law if it is

based undisputably on a meritless legal theory, such as if the complaint alleges the violation of a legal

interest which clearly does not exist."[38]   Banks complaint, even as amended by his *Spears* hearing

testimony on March 17, 2005 and May 24, 2005, suffers from both deficiencies.  28 U.S.C. § 1915

provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid,
> the court *shall* dismiss the case at any time the court determines that –
>> (B) the action or appeal –
>>> (I)     is frivolous or malicious; [or]
>>> (ii)    fails to state a claim for which relief may be

---

[35]*United States ex rel. Thompson v. Columbia/HCA Healthcare Corporation*, 125 F.3d 899, 903 (5th Cir.1997); *see also Williams*, 112 F.3d at 178 (Rule 9(b) demands a larger role for pleading in defining of [fraud] claims).

[36]*See, e.g., Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994).

[37]*See Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

[38]*Davis,* 157 F.3d at 1005 (*quoting McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

granted....[39]

## III. ANALYSIS

### A. The Allegations against David McMillin

Plaintiff alleges that McMillin acted with total and deliberate indifference to his rights as an heir to his mother's property and the provisions of the mortgage documents with respect to the property in violation of the Fourteenth Amendment of the United States. He further alleges that McMillin acted in an arbitrary and capricious manner by directing that writs of seizure be issued in connection with the executory process foreclosure state action filed on behalf of his client Mortgage Electronic Registration Systems, Inc. ("MERSI") in the Louisiana state court action styled, *"Mortgage Electronic Registration Systems, Inc. vs. Glen C. Banks*, Civil District Court for the Parish of Orleans Docket Number 04-89782-I." Banks alleges that, knowing that he was unable to defend his position because of his financial condition and great depression following the death of his mother, McMillin maliciously directed defendant Sheriff Paul Valteau to serve notices of seizure and give copies of the aforesaid notices to the plaintiff's tenants at 628 Alexander St., New Orleans, Louisiana.[40] Plaintiff further alleges that the notice of seizure constitutes breach of the contract and convenants, in addition to his rights under the Fourteenth Amendment. Banks only conclusorily alleges that the defendants' collective acts constitute malice, breach, negligence, fraud, conspiracy and violation of his constitutional rights.[41]

---

[39]28 U.S.C. § 1915(e)(2)(B)(I-ii).

[40]*See* Complaint at p. 14.

[41]*See* Complaint at p. 22.

At the outset, McMillin notes that he was and remains counsel for MERSI in the state court executory foreclosure proceeding referred to above and owes no duty, whatsoever, to the plaintiff under state or federal law. Essentially, McMillin contends that the plaintiff's complaint fails to state a claim against him. The defendant highlights that plaintiff's complaint is bereft of specific allegations of fact against him which support any claim under the various legal theories asserted by Banks. McMillin notes that any factual allegations directed toward his own alleged wrongdoing are set forth in pages 13, 14 and 15 of the complaint and a review of those allegations demonstrates the merits of his Rule 12(b)(6) motion.

McMillin explains that, after the mortgage was assigned to MERSI, Ms. Banks defaulted on the payments due under the terms of the mortgage. MERSI then hired the Watson, McMillin law firm to institute foreclosure proceedings on the property (626-28 So. Alexander St., N. O., La.), which secures the mortgage. On June 18, 2004, McMillin filed the executory foreclosure proceeding on behalf of his client (MERSI) in Civil District Court for the Parish of Orleans. The only allegation against McMillin is that he requested the issuance of Writs of Seizure on behalf of his client in a pending executory proceeding. There is no contract claim properly alleged against him. Moreover, the facts stated in the complaint do not support a negligence/tort or § 1983 conspiracy claim against him.

Addressing the plaintiff's opposition memorandum, Banks directs the Court's attention to correspondence of McMillin dated June 10, 2004 and June 28, 2004 addressed to Glen C. Banks and Occupants of 626-28 Alexander St., respectively. The June 10, 2004 correspondence is purportedly a response to Ms. Banks' inquiry as to the amount necessary to cure the default under the terms of her

mortgage.[42] Plaintiff argues conclusorily that McMillin's response and request for past due indebtedness in the amount of $8,014.70 constitutes "blackmail" and "torture," which persisted up until the time of Ms. Banks' death.[43] Banks contends that McMillin had knowledge of Ms. Banks' deadly illnesses and, in so doing, refers to otherwise confidential medical records which were appended to his complaint filed with this Court in October of 2004.

Turning to the June 28, 2004 correspondence addressed to the occupants of the 626-28 So. Alexander St., plaintiff contends that this notice to occupants somehow shows that McMillin did not even know his mother's name at the time foreclosure proceedings were instituted.[44] Plaintiff further summarily argues that the defendant conspired with the state court judge, The Honorable Piper Griffin, to appoint Dale Atkins (Clerk of Civil District Court) as curator in the state court executory foreclosure proceeding.[45]

Plaintiff further contends that McMillin has engaged in illegal *ex parte* communications with this Court, highlighting the defendant's letter to the undersigned Magistrate Judge, which was also sent contemporaneously to the plaintiff, to advise the Court of the plaintiff's failure to provide copies of motions and other papers filed with this Court. Plaintiff contends that McMillin's introduction, stating that he is a defendant in this case as this Court knew,[46] constitutes proof of some undefined conspiracy between the defendant and the undersigned Magistrate Judge.

---

[42]Plaintiff's Exhibit "11A".

[43]*See* Plaintiff's Motion in Opposition, at p. D.

[44]*See* Motion in Opposition, at p. F.

[45]*Id.,* at pp. G-H, 9.

[46]*Id.* at pp. 7-8.

Further, in opposing McMillin's motion, Banks' refers this Court to the alleged "unconstitutional" foreclosure proceedings filed against Ms. Banks in June of 2004[47] and invites the undersigned Magistrate Judge to obtain transcripts of all of the hearings conducted in the state court proceeding.[48] Plaintiff argues that to dismiss this case against McMillin and others pursuant to Rule 12(b)(6) would constitute a travesty of justice, suggesting that other "elderly, sickly and minority" individuals "will become subject to these scams, conspiracies and violations."[49]

Plaintiff submits that the notice from Midland Mortgage [Plaintiff's Exhibit 21], advising Ms. Banks that Midland Mortgage was unable to continue with the Pre-Foreclosure Sale Program because of the mortgagor's [Ms. Banks'] death, shows that the delinquency notice was false. Referencing the document entitled "CASH SALE," plaintiff again argues in conclusory fashion that the aforesaid document proves that there never was a mortgage on the property and that there was merely a cash sale.

Plaintiff contention that the "CASH SALE" document proves his claims against McMillin and all of the other named co-conspirators is frivolous.[50] For purposes of opposing McMillin's motion to dismiss, plaintiff makes the specious argument that there was no mortgage at all and that both he and his mother are victims of a tortious/criminal scheme involving "blackmail."

---

[47]*Id.* at pp. 17, 23.

[48]*Id.* at p. 19.

[49]*See* Motion in Opposition at p. 24.

[50]*Id.* at p. 26.

As McMillin argues, the only allegations against him set forth *in the complaint* are that:

• he acted with total subjective deliberate indifference to plaintiff's rights under the Fourteenth Amendment;

• he was vindictive, arbitrary, capricious and unethical in directing that notices of seizures be issued in the state executory foreclosure proceeding; and

• he should be liable in his individual and official capacities because of the violations of his right to procedural due process.

Plaintiff has failed to specify any actions or omissions on the part McMillin that entitle him to relief in this proceeding. The position plaintiff has most recently espoused – that there never was a mortgage on 626-28 So. Alexander and that McMillin's response to Ms. Banks' inquiries regarding the amount of payments past due on her mortgage constitutes an attempt to "blackmail" her – is without merit, being wholly contradicted by the Mortgage documents appended to his pleadings.

As aforestated, the entirety of plaintiff's wrongful death action is premised upon conditions/convenants in an extant mortgage, the existence and validity of which is admitted in the plaintiff's complaint. Additionally, the existence of the mortgage is corroborated by Ellzey's documents submitted in support of his motion to dismiss.

Moreover, this Court has previously advised the plaintiff that it is without subject matter jurisdiction, insofar as the plaintiff seeks an appeal of the state probate court's rulings. The plaintiff's spurious allegations regarding *ex parte* communications with the undersigned Magistrate Judge are utterly frivolous and deserve no further comment.

Plaintiff's conclusory allegation that the medical records provide sufficient proof that McMillin and others had knowledge of the life threatening disease allegedly suffered by Ms. Banks

up until the time of her death are meritless. Said medical records are subject to privilege/confidentiality under state and federal law. Absent disclosure *via* proper medical authorization or court order, Ms. Banks' medical records were not available to the defendant McMillin. Moreover, the record reflects that McMillin was not served with the plaintiff's complaint and appended medical records until mid-December of 2004, which postdates correspondence sent by McMillin in September of 2004.

More specifically, in an attempt to defeat McMillin's motion to dismiss, plaintiff now contends that defendant is liable in tort for fraud, blackmail and intentional misrepresentation regarding mortgage indebtedness. When a defendant is charged with fraud, the plaintiff must state the circumstances constituting fraud with particularity. What constitutes particularity will "necessarily differ with the facts of each case." Although Rule 9(b) permits a plaintiff to allege generally the defendant's intent to commit fraud, a mere allegation that the defendant had the requisite intent will not satisfy Rule 9(b). To adequately plead fraudulent intent, the plaintiff must set forth specific facts that support an inference of fraud. At a minimum, courts require the plaintiff to specifically state the time, place, and contents of the alleged false representation, as well as the identity of the person making the alleged misrepresentation and what that person obtained thereby. Dismissal of a fraud claim for failure to plead the claim with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).

Plaintiff's complaint fails to satisfy the heightened pleading requirement imposed by Rule 9(b). In this case, even in the plaintiff's motion in opposition, plaintiff fails to plead any facts tending to suggest a potential motive to commit fraud on the part of McMillin. The plaintiff's reference to the state court executory foreclosure proceedings and suggestion that this Court should

order transcripts of those proceedings does not meet the requirements of Rule 9(b). Mindful that Rule 9(b) was enacted to guard against the labeling of "non-actionable expression[s] of opinion" as fraud claims, the court declines this invitation.

Although the purpose of Rule 9(b) is to provide adequate notice to the defendant, the complaint must set forth some facts lest it be dismissed as containing mere conclusory allegations that amount "to nothing more than speculation." Here, the plaintiff's complaint includes ample proof regarding the *existence* of a mortgage on the decedent's property at 626-28 So. Alexander St. Even considering the plaintiff's argument regarding a conspiracy to blackmail Ms. Banks and assuming the non-existence of a mortgage on the property, the Court is left to speculate as to the specific financial institutions involved, when the conspiracy commenced and to assume McMillin's and all of the other defendants' fraudulent intent throughout. Plaintiff's omissions cannot be overlooked.

For the foregoing reasons and those previously set forth in the undersigned Magistrate Judge's Report and Recommendation dated April 15, 2005 [Rec. Doc. No. 69], which is incorporated herein by reference, the Court find that the plaintiff has failed to state a claim upon which relief can be granted and plaintiff's claims against McMillin should be dismissed as frivolous.[51]

### B. Allegations against H. Edward Ellzey

Ellzey was the notary public/settlement agent in connection with the acquisition of the subject property acquired by Glen C. Banks from seller, Anthony Hyde. It is clear that the only involvement Ellzey had in the matters alleged is his acting as the Notary Public for the act of sale and mortgage with respect to 626-28 S. Alexander St. New Orleans, Louisiana. The Purchase Agreement was

---

[51]*See* Report and Recommendation dated April 15, 2005 at pp. 13-17 (finding plaintiff's wrongful death is frivolous and that the plaintiff has failed to plead fraud and conspiracy with the requisite Rule 9(b) particularity).

contingent upon Glen Banks securing an FHA insured mortgage and that the Act of Sale was to be at the expense of the purchaser (Glen C. Banks) to be passed before Ellzey ( Notary Public) on February 15, 2000 or sooner.

It is undisputed that in connection with the sale, Glen Banks executed a waiver of redhibition (*i.e.*, "As Is" Addendum/Ellzey #3). Glen Banks further received the Property Disclosure Addendum/Ellzey #4 noting that the property was to be sold "as is" and "with full waiver of redhibition in act of sale documents" and that the seller had no knowledge or reports of lead base paint or lead based paint hazards on the property. The purchaser (Glen Banks) further acknowledged that she received a 10-calendar day opportunity (or mutually agreed upon period) to conduct risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards. *See* Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (Ellzey #5). Thereafter Glen Banks applied for a 203(k) mortgage loan authorized by Section 203(k) of the National Housing Act (12 U.S.C. § 1709(k)). Franklin American Mortgage Co. approved Glen Banks' application and provided a loan in the amount of $63,500.00. On February 14, 2001, Hyde sold the property to Glen Banks. *See* Cash Sale/Ellzey # 6. Glen Banks also executed a Promissory Note for $63,995.00 at 8% interest per annum for 30 years in favor of Franklin Mortgage Co. *See* Note/Ellzey #7. Glen Banks also executed a Mortgage for $63,995.00 at 8% interest per annum for 30 years in favor of Franklin Mortgage Co. *See* Mortgage/Ellzey #8.

All three documents (Cash Sale, Promissory Note and Mortgage) were executed in Ellzey's presence as the closing Notary Public as stipulated and agreed to by the Seller (Hyde) and Purchaser (Glen Banks) in their Purchase Agreement of January 5, 2000. On March 15, 2001, HUD endorsed said mortgage for insurance. On February 14, 2001, several events occurred:

(1) Glen Banks received the FHA "Notice to the Homebuyer" form advising her of some of the existing problems with the property. *See* Ellzey #9.

(2) Glen Banks waived her right to receive an inspection and to receive an FHA "Homebuyer Summary". *See* Ellzey #10.

(3) Glen Banks accepted the property "as is" and acknowledged that Franklin American Mortgage does not warrant either the present or the future condition of the property. *See* Ellzey #11.

(4) Glen Banks received insurance binders for Hazard and Flood insurance on the property. *See* Ellzey ##'s 12(a) and 12(b).

(5) Glen Banks acknowledged receipt in writing of the HUD Settlement Statement noting the name of the seller (Hyde) and lender (Franklin American Mortgage Co.) and further reflecting that Hyde paid for 1 year of Hazard and Flood Coverage and that Hazard and Flood escrow accounts were established with the lender (Franklin) for payment of future premiums. *See* Ellzey #13.

(6) Glen Banks was provided with a Mortgage Payment Letter and an Initial Escrow Account Disclosure Statement which show how Banks' monthly payments were to be applied to Principal, Interest and Escrow of Taxes, Insurance. as long as she continued to make the required monthly mortgage payments. *See* Ellzey ##'s 14a and 14(b).

The Court notes that the complaint is devoid of any specific factual allegations of wrongdoing or wrongful omissions or any fact that could possibly establish any breach of duty or obligation of the notary public/settlement agent in connection with the sale/mortgage of the S. Alexander St. property to Glen Banks. There are no allegations of fact regarding Ellzey violating any civil rights statute, aside from plaintiff's conclusory allegations on an undefined conspiracy to commit fraud with respect to the mortgaged property in question.

As noted in this Court prior report recommending dismissal of the claims against FAMC and Kim Hill,[52] Glen Banks' death certificate shows her cause of death as "cardiopulmonary arrest and diabetic coma. None of her medical records show that any condition she had was caused by exposure

---

[52]*See* Report and Recommendation signed April 15, 2005, at pp. 13-14 [Rec. Doc. No. 69].

to lead-based paint. Her records indicate only the following conditions, to wit: foot pain at night, edema, chronic edema, hyperthyroid, dehydration, enlarged lobe of left thyroid gland and mediastinal lymphadenopathy with a mildly enhancing soft tissue mass - anterior to the aorta and suspicion of lymphoma.[53]

Moreover, documentary evidence detailed above amply demonstrates that Glen Banks agreed to acquire the property "as is" waiving all redhibitory defects and/or possible lead-based paint hazards six weeks before the actual sale was executed on February 14, 2001. At the time of sale, Glen Banks executed Waiver of FHA "Homebuyer Summary" Notice Period and received the Notice to Homeowner FHA document outlining various problems with the subject property. Most notably, plaintiff testified at the May 24, 2005 *Spears* hearing that he was not present at the time Glen C. Banks executed the closing documents, including but not limited to the Cash Sale, Promissory Note and Mortgage and related documents.

It is this Court's opinion that neither the allegations in the complaint, nor the relief requested (money judgment in the amount of $10 million dollars) give any hint of the nature of (1) any *viable* cause of action against Ellzey (settlement agent/notary public) or (2) a claim against Ellzey that has any basis in fact.

### C. The Allegations Against Rosalind G. Washington

With respect to Rosalind Washington, the only allegation stated in the complaint is that:

"[Washington] should be held liable for her participation in the above-mentioned with intents (sic) to deprive me of my rights as agreed to in the closing contract as soul (sic) heir of the plaintiff Glen Banks (decendant) (sic)."[54]

---

[53]*See id.* (discussing medical records submitted by the plaintiff).

[54]*See* Complaint at p. 25.

Plaintiff has filed claims against a number of defendants alleging negligence, deliberate indifference, fraud, conspiracy, breach of contract, wrongful death, violations of 12 U.S.C. § 2601, violation of 24 CFR Part 3500, Louisiana's Deadman's Statute and his Fourteenth Amendment Right to procedural due process. With respect to Ms. Washington, the plaintiff's complaint is devoid of any factual wrongdoing by Ms. Washington of HUD.

Banks filed a response in opposition to Washington's motion to dismiss attaching as an exhibit a credit report and arguing without any cogent or decipherable explanation that the credit report proves that Ms. Washington intended to steal his inheritance. Plaintiff argues that Ms. Washington was engaged in some undefined criminal conspiracy with Midland Mortgage Company to steal Glen Banks' property and the insurances thereto, until the plaintiff (Leroy Banks) came forward and "through (sic) a monkey rench (sic) in their programe (sic)." He contends that Ms. Washington has committed this type of conspiracy routinely and has filed for bankruptcy to hide the final part of her conspiracy after she has illegally obtained other people's property. Although the plaintiff was not present at Washington's counseling session pursuant to which Glen Banks executed the counseling certificate, Banks alleges conclusorily that Washington employed coercive tactics to persuade Ms. Banks to execute the certificate in question, all as part of the larger undefined conspiracy.

Plaintiff's claims against Washington suffer from the same deficiencies as his claims against Ellzey. Plaintiff has failed to comply with Rule 9(b) and otherwise failed to identify any duty owed by Ms. Washington to the plaintiff or the decedent that was breached.

## D. The Allegations Against HUD

The Federal defendant highlights that the controversy arises out of a mortgage and note dated February 12, 2001, between Glen Banks and Franklin American Mortgage Co. Plaintiff seeks to hold HUD similarly liable based upon HUD's endorsement of the mortgage for FHA mortgage insurance under Section 203k of the National Housing Act, 12 U.S.C. § 1709(k). The Government points out that, beyond the act of endorsement, there are no allegations of fact setting forth any wrongful conduct or omissions on the part of HUD or its employees. HUD has moved the Court to dismiss the claims against it due to the failure to meet Rule 8(a) pleading standards, lack of subject matter jurisdiction and the failure to state a claim.

Counsel for the Government explains that, under HUD's Single-Family Mortgage Direct Endorsement Program, HUD does not review applications for mortgage insurance before the mortgage is executed. *See* 24 C.F.R. Part 203, Subpart A, § 203.255. Instead, the lender (FAMC) performs such action without the specific involvement or approval of HUD. In this case, Franklin American Mortgage approved Glen Banks' application and provided a loan in the amount of $63,500.00. *See* Note and Mortgage executed in favor of Franklin Mortgage by Glen Banks on February 12, 2001. The Secretary of HUD provided FHA mortgage insurance insuring Franklin against loss in the event of the borrower's default, pursuant to Section 203k of the National Housing Act. HUD endorsed the mortgage for insurance on March 12, 2001. However, HUD was not a party to the mortgage and/or note between Glen Banks and Franklin American Mortgage Company.

The Government accurately points out that, although plaintiff's complaint refers to the Civil Rights Act of 1964, 42 U.S.C. § 1983 in support of its conspiracy allegations and alleges breach of contract, fraudulent inducement and wrongful death, the complaint is utterly devoid of any facts that

could possibly establish a breach of any duty on the part of HUD. Plaintiff has given no notice of any claim whatsoever against the Federal Government.

Additionally, the United States is immune from suit except as it consents to be sued. Plaintiff's claims against the Government are barred unless they fall within some applicable Congressional waiver of sovereign immunity. Plaintiff utilized a complaint form for violation of civil rights and references § 1983, but alleges no facts upon which such jurisdiction can be grounded. Plaintiff's tort claims are barred by the Federal Tort Claims Act and plaintiff has failed to comply with the administrative exhaustion requirements of the FTCA. Plaintiff's claims of intentional and fraudulent conduct and/or conspiracy are specifically excluded from the waiver of sovereign immunity under the FTCA. *See* 28 U.S.C. § 2680(h).

Neither the plaintiff's allegations as augmented by his *Spears'* hearing testimony, nor the prayer for judgment in the amount of $150 million dollars give the Court any clue as to the nature of any viable cause of action against HUD. Assuming *arguendo* that there was a false foreclosure proceeding pending with respect to the property in question about which the mortgagee was unaware, plaintiff has failed to identify any duty on the part of the Federal Defendants to notify Glen Banks of any such foreclosure proceedings pending in state court.

In sum, plaintiff's conclusory allegations unsupported by well-pled facts are insufficient as a matter of law and thus fail to state a claim against HUD.

### E. The Allegations Against the Civil Sheriff Paul R. Valteau, Jr.

The only specific allegations against the Civil Sheriff of the Parish of Orleans allegedly implicating the Sheriff in the alleged "conspiracy" is that the Civil Sheriff's office served the notices of seizure issued by the state court judge in legal proceedings presently pending before that court.

In answer to the rule to show cause, plaintiff further alleges that the Civil Sheriff did not execute the Notice of Seizure pursuant to the order of the state judge, but did so on his own. Plaintiff further claims that his mother's name, as it appears in the return of service dated October 11, 2004 appended to his response to the Court's Rule to Show Cause, is a forgery. However, the name as it appears on the return does not purport to be the signature of Glen C. Banks; the document is simply a return of service that has been executed by the deputy who actually served the notice.

*Via* correspondence dated January 10, 2005 [Rec. Doc. No. 29], the Orleans Parish Civil Sheriff provided the Court documents, countering the plaintiff's bald assertions that the Sheriff issued a notice of seizure without court authority and that the Sheriff's deputy who served the notice of seizure forged the defendant's name on the Sheriff's return of service. The person who answered the door said Banks lived next door. The Sheriff's Deputy thought he was serving Banks, but he served the occupant of the apartment, not Glen Banks (she had already died).

Law enforcement officers have *absolute immunity* for enforcing the terms of a court order. Therefore, where a sheriff executes a facially valid order in a constitutionally permissible manner, *absolute* immunity shields him from harassing litigation. This is so because an official charged with enforcing a facially valid court order has no choice. Such immunity is akin to the settled proposition that judges are protected by absolute immunity. *See In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002) (*citing Mays v. Sudderth*, 97 F.3d 107, 109-113 (5th Cir. 1996)).

The Civil Sheriff is entitled to absolute immunity and is not liable for negligence in mistakenly serving the wrong person.

## F. Supplemental Jurisdiction

It is noteworthy that, because the plaintiff's federal due process and § 1983 claims of a broad undefined conspiracy against the Federal and State actors (HUD, Rosalind G. Washington and Civil Sheriff Paul R. Valteau, Jr.) are frivolous, this Court is without subject matter jurisdiction. More to the point, in addition to lack of federal question jurisdiction from the outset, there is a lack of complete diversity of citizenship because plaintiff and defendants( Ellzey and Hyde) are all Louisiana domiciliaries. Therefore, this Court is without subject matter jurisdiction with respect to all of the plaintiff's non-Federal and/or state law claims, whether fraud, blackmail or extortion. Even if the plaintiff were to urge the exercise of discretionary supplemental jurisdiction under 28 U.S.C. § 1367,[55] the Court should decline for the following reasons.

Because the plaintiff's claims against the Federal and State actors are dismissed as frivolous and/or failure to state claim and/or absolute immunity, subject matter jurisdiction was absent at the outset. In any event, whether to exercise supplemental jurisdiction is discretionary.

When federal claims are dismissed at an early stage of the litigation, the state law claims over which the court would have supplemental jurisdiction should ordinarily be dismissed. In *Carnegie-Mellon University v. Kohill*, 484 U.S. 343 (1988), the Supreme Court stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* at 350. In *United Mine Workers of America v. Gibbs*, 383 U. S. 715

---

[55]28 U.S.C. § 1367 provides:
In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Id.*

(1966), the Court explained the reasons for this rule as follows, to wit:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*Gibbs*, 383 U.S. at 726.[56]

This case remains in its infancy, having not advanced beyond the pleading stage. No discovery has taken place and the case has not yet been scheduled for trial. Except for several *Spears* hearings, the Court has spent the better part of the year attending to preliminary matters, to wit: (1) denying the plaintiff's motions for a temporary restraining order and to open a succession;[57] (2) issuing rules to show cause why claims should not be dismissed on account of failure to comply with Rule 4(m), *inter alia*;[58] and (3) issuing reports/recommendations and orders dismissing the plaintiff's claims pursuant to the various defendants' Rule 12(b) motions.[59]

---

[56]*See also Robertson v. The Neuromedical Center*, 161 F.3d 292 (5th Cir. 1998); *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1465 (5th Cir. 1995); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580 (5th Cir. 1992) (*citing Carnegie-Mellon, supra,* and holding that the district court had abused its discretion in failing to dismiss the state law claims)

[57]*See* Orders dated November 15, 2004, December 14, 2004 and July 22, 2005 [Rec. Doc. Nos. 8, 15, 81].

[58]*See* Rule to Show dated May 23, 2005 [Rec. Doc. No. 74]; Report and Recommendation dated June 16, 2005 [Rec. Doc. No. 78].

[59]*See* Report and Recommendation dated April 15, 2005/Order adopting same [Rec. Doc. Nos. 69 and 82]; Report and Recommendation dated April 15, 2005/Order adopting same [Rec. Doc. No. 70 and 83].

As both the Supreme Court and the Fifth Circuit have noted, federal courts are not the final expositors of state law and their decisions are not subject to correction on appeal to a state court.[60] Under the circumstances presented, the plaintiff will suffer no prejudice as a result of a dismissal of his state law claims against the non-Federal and non-State actors with*out* prejudice. To the extent that any of the aforesaid claims have not already prescribed, the period of limitations will be tolled until thirty (30) days after such dismissal.[61]

Considering the applicable standards, the entirety of the record in this matter, the submissions of all of the parties and the plaintiff's *Spears* hearing testimony, the undersigned Magistrate Judge makes the following recommendations for the reasons detailed above.

## RECOMMENDATIONS

**IT IS RECOMMENDED** that the Rule 12(b)(6) motions filed on behalf of the United States Department of Housing and Urban Development [Rec. Doc. No. 57] and Rosalind G. Washington [Rec. Doc. No. 58] be GRANTED, dismissing all of the plaintiff's claims against the aforesaid defendants WITH PREJUDICE.

**IT IS FURTHER RECOMMENDED** that all of the plaintiff's claims against the Civil Sheriff Paul R. Valteau, Jr., be DISMISSED WITH PREJUDICE on the basis of *absolute immunity*.

**IT IS FURTHER RECOMMENDED** that the Motions to Dismiss filed on behalf of H. Edward Ellzey [[Rec. Doc. No. 61]and David C. McMillin [Rec. Doc. Nos. 35/40] be GRANTED, dismissing all of the federal claims against defendants Ellzey and McMillin WITH PREJUDICE and further dismissing the plaintiff's state law claims against defendants, Ellzey and McMillin,

---

[60]*Gibbs,* 383 U.S. at 726; *Parker &Parsley,* 972 F.2d at 588.

[61]*See* 28 U.S.C. § 1367(d).

WITHOUT PREJUDICE for lack of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that the plaintiff's claims against defendant Anthony Hyde, all of which are state law claims, be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

## OBJECTIONS

A party's failure to file written objections to the findings, conclusions and recommendations of a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district judge, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 25ᵗʰ day of August, 2005.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE